Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly Describe the property to be searched or identify the person by name and address)*<br>Residence located at 1545 N. Vah-Ki Road, Bapchule, AZ 85121, to include the property's curtilage, vehicles, outbuildings and structures on the property. | Case No. 22-199 MB |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of __Arizona__ .
(identify the person or describe the property to be searched and give its location):

**As further described in Attachment A.**

The person or property to be searched, described above, is believed to conceal (identify the person or describe the property to be seized):

**As set forth in Attachment B.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

YOU ARE COMMANDED to execute this warrant on or before   __June 24, 2022__   .
                                                                    *(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10 p.m.
☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the United States Magistrate Judge on duty.--

__in the District of Arizona__ .
     *(name)*

N/A ☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized (*check the appropriate box*)     ☐ for 30 days (*not to exceed 30*)
                                              ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: __June 10, 2022 @ 7:30 pm__    __/s/ Michelle Burns__
                                                                                    *Judge's signature*

City and State:  __Phoenix, Arizona__        __Honorable Michelle H. Burns, U.S. Magistrate Judge__
                                                                        *Printed name and title*

AO 93 (Rev. 01/09) Search and Seizure Warrant (Page 2)

## RETURN

| Case No.: 22-198mB ~~199~~ | Date and Time Warrant Executed: 6/10/22  8:30 PM | Copy of warrant and inventory left with: Maria Antonda |
|---|---|---|

Inventory Made in the Presence of: SA Daniel Baker

Inventory of the property taken and name of any person(s) seized:

Nothing was seized from the property.

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 6/15/22

_Malcolm Jones_
Executing officer's signature

Malcolm Jones  Special Agent
Printed name and title

## ATTACHMENT A

### Property to Be Searched

### DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS

### TO BE SEARCHED

**PROPERTY:**

The residence located at 1545 North Vah-Ki Road, Bapchule, AZ 85121 (within the exterior boundaries of the Gila River Indian Community, to include the main structure, outlying structures and vehicles located on the property's curtilage. The residence is a pink colored home with the numbers "1545" on the west side and is known to be the current residence of Milo Franco, Sr.








## ATTACHMENT B

### Particular Things to be Seized

Evidence in the form of:

1. Firearms or other deadly weapons. Ammunition and/or components used in the manufacture of ammunition to include spent shell casings, gun powder, primers, and bullets. Holsters, cases, or boxes used to carry or transport firearms or ammunition, and or any receipts or photographs detailing the purchase or ownership of any of the aforementioned items;

2. Clothing, to include but not limited a black t-shirt, blue jean pants, shoes that may contain evidence of the shooting of H.L. to include blood and/or substances consistent with DNA;

3. Electronic devices, to include but not limited to telephones and tablets that may contain evidence pertaining to the shooting of H.L;

Which may be located inside or within the curtilage of 1545 N. Vah-Ki Road, Bapchule, AZ 85121.

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly Describe the property to be searched or identify the person by name and address)*<br>Residence located at 1545 N. Vah-Ki Road, Bapchule, AZ 85121, to include the property's curtilage, vehicles, outbuildings and structures on the property. | Case No. 22-199 MB |

## APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, SA Daniel Baker, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**As further described in Attachment A.**

Located in the District of __Arizona__, there is now concealed *(identify the person or describe the property to be seized)*:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. §113(a)(3) | Assault With a Dangerous Weapon |

The application is based on these facts:
**As set forth in Attachment C, incorporated herein by reference.**

☒ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Raynette Logan /RP/
*Sworn Telephonically*

DANIEL BAKER  Digitally signed by DANIEL BAKER
Date: 2022.06.10 19:23:37 -07'00'
*Applicant's Signature*

Daniel F. Baker, SA, FBI
*Applicant's printed name and title*

Date issued: June 10, 2022

Judge's signature

City and State: Phoenix, Arizona

Hon. Michelle H. Burns, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

### DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS

### TO BE SEARCHED

**PROPERTY:**

The residence located at 1545 North Vah-Ki Road, Bapchule, AZ 85121 (within the exterior boundaries of the Gila River Indian Community, to include the main structure, outlying structures and vehicles located on the property's curtilage. The residence is a pink colored home with the numbers "1545" on the west side and is known to be the current residence of Milo Franco, Sr.








## ATTACHMENT B

### Particular Things to be Seized

Evidence in the form of:

1. Firearms or other deadly weapons. Ammunition and/or components used in the manufacture of ammunition to include spent shell casings, gun powder, primers, and bullets. Holsters, cases, or boxes used to carry or transport firearms or ammunition, and or any receipts or photographs detailing the purchase or ownership of any of the aforementioned items;

2. Clothing, to include but not limited a black t-shirt, blue jean pants, shoes that may contain evidence of the shooting of H.L. to include blood and/or substances consistent with DNA;

3. Electronic devices, to include but not limited to telephones and tablets that may contain evidence pertaining to the shooting of H.L;

Which may be located inside or within the curtilage of 1545 N. Vah-Ki Road, Bapchule, AZ 85121.

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Daniel F. Baker, Special Agent with Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows, to wit:

## INTRODUCTION

The facts of this case, as more fully detailed herein, are that on or about June 10, 2022, within the confines of the Gila River Indian Community ("GRIC"), within the District of Arizona, MILO FRANCO, SR, shot H.L., violating federal law by committing Assault with a Dangerous Weapon, in violation of Title 18, United States Code, §§ 113(a) (3). On June 10, 2022, the Gila River Police Department (GRPD) responded to a house on North Prairie Road, Bapchule, AZ, in response to a male subject being shot. The male was later identified as H.L. H.L. was ultimately transferred to the Chandler Regional Medical Center, where he is currently receiving further medical attention. During the course of the investigation, it was determined that the shooter was MILO FRANCO, SR, and during an interview, MILO FRANCO, SR. admitted to shooting H.L. Based on witness statements, it is believed that MILO FRANCO, SR., went to 1545 N. Vah-Ki Road, known to be his residence, (hereinafter TARGET RESIDENCE) after the shooting. In addition, it is believed that he may have changed clothing and left the firearm used in the shooting at the TARGET RESIDENCE.

I am requesting that the Court issue a warrant to search the TARGET RESIDENCE, in order to locate, and seize the firearm, clothing and any other electronic devices that may have been used and/or contain evidence surrounding the shooting of H.L.

## PRELIMINARY BACKGROUND INFORMATION

1. Your affiant is a graduate of the FBI Academy in Quantico, VA. Your affiant has been employed with the FBI since June 2015. Your affiant is currently assigned to the FBI Phoenix Division and has primary investigative responsibility in Indian Country matters, to include, violent crimes, such as homicide, sexual assaults, and aggravated assaults.

2. I have been trained in various aspects of law enforcement, including searches of houses for evidence used in a crime. These searches have included the seizure of firearms, evidence with DNA, and digital media, to include telephone and social media content. In addition, I have been involved in multiple investigations in which digital media, including telephones and social media accounts, have been seized, searched, and forensically examined.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, officers, investigators and witnesses. This affidavit is intended to show merely there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I have set forth only the facts I believe are necessary to establish probable cause to believe evidence of a violation of Title 18, United States Code, §§ 1153 and 113(a)(3), Assault with a Dangerous Weapon.

4. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that are necessary to establish probable cause to believe that evidence of violations of 18 USC §§ 1153 and 113(a)(3) are located at the 1545 N. Vah-Ki Road, Bapchule, AZ 85121 (the TARGET RESIDENCE), to include firearms, clothing

and electronic devices where content may be downloaded and/or stored.

5. This Court has jurisdiction over these offenses under 18 U.S.C. § 1153 because the below-described events occurred on the GRIC, a federally recognized tribe, and MILO FRANCO SR. and H.L. are enrolled members.

## DETAILS OF THE INVESTIGATION

6. On June 10, 2022, at approximately 1:37 a.m., Gila River Police Department (GRPD) Officer C. Murphy was directed to respond to a home on Prairie Road, Bapchule, AZ (within the jurisdictional boundaries of the GRIC) in regards to a male individual that had been shot in the face. The male subject was later identified as H.L., an enrolled member of the GRIC.

7. An unnamed second reporting party notified GRPD that H.L. was still alive and breathing. The second reporting party claimed that the responsible shooter was MILO FRANCO, SR. After the shooting, MILO FRANCO, SR, took off running into an unknown direction. He was described as wearing a black shirt, jeans and having a bald head. It was further reported that MILO FRANCO, SR, used a handgun in the shooting, potentially a "380." The second reporting party finally stated that MILO FRANCO, SR, still had the firearm with him when he fled the scene.

8. A third, unnamed reporting party advised that MILO FRANCO, SR, had fled the scene of the shooting in the direction of Sacate Housing.

9. At approximately 1:49 a.m., Officer Murphy and GRPD Sgt. Parsons arrived on scene. Upon their arrival, they observed a female individual, identified as K.A (an enrolled member of the Tohono O'odtham Indian Community), holding a shirt to the side of H.L.'s face. Officers observed that H.L was lying face down on the floor. H.L. was moving his body and

making gurgling sounds.  K.A. told Officers that H.L. was not able to talk due to his injuries.

10. Gila River EMS (GREMS) arrived on scene and attended to H.L.  They later transported him to the Chandler Regional Medical Center for further medical treatment.  H.L. was ultimately admitted into the ICU.  At the time of this affidavit, H.L. was reported to be in stable condition.

11. Once GREMS left the scene, Officer Murphy continued to speak with K.A.  K.A. explained that she was in her bedroom with H.L. and their son, John Doe #1.  MILO FRANCO, SR, arrived at the residence and confronted H.L. about MILO FRANCO, SR's girlfriend, M.A (an enrolled member of the Tohono O'odtham Indian Community).  MILO FRANCO, SR, was asking where M.A. was.  H.L., standing at the time, told him to calm down.  MILO FRANCO, SR, then got upset and punched H.L. on the left side of his face, causing H.L. to fall down on the bed.  MILO FRANCO, SR, then reached into his pocket and grabbed his "handgun."  As he struggled to reach the firearm, H.L. said to MILO FRANCO, SR, "Do what you gotta do."  MILO FRANCO, SR, got close to H.L. and placed is hand on H.L.'s chest.  MILO FRANCO, SR, then pressed the "handgun" against H.L.'s left cheek and pressed the trigger, shooting H.L. once in the face.  As H.L. fell to the floor, MILO FRANCO, SR, rushed outside and fled the scene.  K.A. advised that she and John Doe #1 were nearby, just standing on the opposite side of the bed at the time of the shooting.

12. K.A. was unsure what type of handgun that MILO FRANCO, SR, used, but she believed that it could have been at "380."  She described the firearm as being the color black all over and having a silver trigger.

13. Officer Murphy had GRPD Dispatch run a criminal history check on MILO

FRANCO, SR. A check of his criminal history revealed a felony conviction for possession of marijuana in 2014. Officer Murphy reported that due to this conviction, MILO FRANCO, SR, would be a "prohibited possessor."

14. FBI Special Agent Malcolm Jones received a call from J.F. stating that MILO FRANCO, SR, was with her, and he was going to turn himself into the GRPD. When SA Jones arrived at the GRPD, he observed MILO FRANCO, SR, in custody with GRPD officers. He was wearing a dark blue t-shirt, black jeans, black socks, and black sandals. SA Jones also observed MILO FRANCO, SR's hands to be covered in a black dirty substance, which he stated was from working on his vehicle.

15. After MILO FRANCO, SR, arrived at the GRPD Main Station, he was interviewed by SA Jones and GRPD Detective Kendrick Powell. MILO FRANCO, SR, stated that he had arrived at North Prairie Road at an unknown time during the evening of June 9, 2022. He explained that he had knocked on the door of the room attached to the residence known as "The Clubhouse," and H.L. answered the door. MILO FRANCO, SR, asked H.L. where M.A. was. Investigators know M.A. to be the girlfriend of MILO FRANCO, SR. FRANCO had been told that M.A. was at the North Prairie Road residence drinking with H.L. and K.A. MILO FRANCO, SR, and H.L. got into a verbal altercation and MILO FRANCO, SR, was asked to leave. Instead of leaving, FRANCO punched H.L. twice in the face. H.L. was able to punch MILO FRANCO, SR, one time in the face before H.L. fell on to the bed. After H.L. had fallen on the bed, MILO FRANCO, SR, reached into his own pocket and pulled out a black 9mm handgun and pointed it right under H.L.'s eye. H.L. then told him that if he was going to shoot him "then do it." MILO FRANCO, SR, shot H.L. in the face one time, fled the scene on a

bicycle and went towards the cemetery where his mother was buried. Before he made it to the cemetery, MILO FRANCO, SR, said he threw the gun somewhere along the side of the road, but could not recall exactly where. He stated that his sister, J.F. saw him at the cemetery. She told him that the police were looking for him and that he should turn himself in. MILO FRANCO, SR., stated that he lived at the TARGET RESIDENCE.

16. MILO FRANCO, SR, told J.F. everything that happened between he and H.L., including that he had shot H.L. After telling her what had happened, he got into the vehicle with J.F. She then drove him to the GRPD Main Station in Sacaton, where he turned himself in.

17. FBI Special Agent Katherine Herndon and SA Jones interviewed J.F. She had heard about a shooting involving MILO FRANCO, SR, her brother, and H.L., her cousin. Immediately following the shooting, J.F. attempted to locate MILO FRANCO, SR, by driving around the area of the shooting and other nearby areas where she thought he may be located. J.F. explained she wanted to find MILO FRANCO, SR, before the police did because one of her brothers had previously been shot by the police and she did not want it to happen again.

18. While looking for MILO FRANCO, SR, J.F. went to the TARGET RESIDENCE, which she knows to be his current residence of record. While there, she spoke with M.A., the known girlfriend of MILO FRANCO, SR. M.A. told J.F. that she had been driving FRANCO around when he got upset and jumped out of her car. J.F. searched M.A.'s vehicle and found that he was not inside.

19. J.F. further spoke to John Doe #2, the son of MILO FRANCO, SR. John Doe #2 stated that M.A. and MILO FRANCO, SR, had been arguing inside the TARGET RESIDENCE

and left together. The argument had occurred after the shooting. J.F. continued looking for MILO FRANCO, SR, with the help of A.V. A.V. ultimately located MILO FRANCO, SR, near the Sweetwater neighborhood at approximately 6:30 a.m. The two met up with J.F. and drove to the GRPD Main Station to turn himself in.

20. J.F. said that as they were driving to the police department, MILO FRANCO, SR, told J.F. that he shot H.L. He explained that H.L. "told me to shoot him so I did." He did not tell J.F. where the gun was located. J.F. then stated that she had last seen MILO FRANCO, SR, during the afternoon of June 9, 2022. She claimed that when FRANCO turned himself in, he appeared to be wearing the same clothing that she saw him in the day before.

21. SA Katherine Herndon and GRPD Detective K. Powell interviewed M.A. M.A. stated that she was at the home of "Gilbert" and "Kim," when she noticed a number of police cars. An individual identified as "Eric" drove up in a white Suburban with an unknown female passenger. "Eric" stated that "Milo shot Henry because of Madi." M.A. explained that "Madi" was a nickname that people used for her. She further provided that "Milo" was MILO FRANCO, SR, and that he was the father of her children, and that H.L. was MILO FRANCO, SR's cousin.

22. M.A. then said she got into her blue, Chrysler and drove to the TARGET RESIDENCE, first stopping at the home of an individual identified as "Nicole." There was no answer at her home, so M.A. continued on to the TARGET RESIDENCE. During an initial interview with M.A. earlier that day, M.A. claimed that she had not seen MILO FRANCO, SR, since June 9, 2022. However, during this subsequent interview, she claimed that MILO FRANCO, SR, was at the TARGET RESIDENCE when she arrived. When asked about the

discrepancy in her statements, M.A. discussed that she had originally told MILO FRANCO, SR, that she was going to take responsibility for shooting H.L., even though she was not even there when it happened. She stated that she did so because MILO FRANCO, SR, needs to be with his children.

23. M.A. advised that the TARGET RESIDENCE belonged to MILO FRANCO, SR's family, and that she was afraid she and her kids would be kicked out of the TARGET RESIDENCE if MILO FRANCO, SR, went to jail for the shooting, as she had been told that the shooting had occurred because of her. M.A. stated that when she got to the TARGET RESIDENCE, MILO FRANCO, SR, opened the door and acted casual, like nothing had happened. M.A. confronted him and asked him about the shooting. He initially denied any involvement, and the two continued to argue. During the argument, the two ended up in M.A.'s Chrysler. As they continued arguing, M.A. advised she wanted to go and see H.L. MILO FRANCO, SR, refused to go and finally told her that he had shot H.L. because "he told me to shoot him in the face, so I did." M.A. asked him where the gun was, but he only told her that it was in "the desert."

24. M.A. drove her vehicle away and attempted to have MILO FRANCO, SR, give her directions so she could find the gun and retrieve it. However, he refused to provide her that information. M.A. did not see him with the gun and stated that he could have had time to hide the gun in the TARGET RESIDENCE before she had arrived. In addition, she believed that he may have had time to change his clothing before she arrived. M.A. neither saw the gun or the soiled clothing belong to MILO FRANCO, SR, while she was at the TARGET RESIDENCE. As they returned to the TARGET RESIDENCE, they noticed police vehicles parked out front.

MILO FRANCO, SR, jumped out of the car and M.A. continued to the residence. That was the last time that M.A. had seen him.

25. As is shown above, there are different accounts as to what MILO FRANCO, SR, may have been wearing when those witnesses saw him. SA Jones conducted an interview with K.A. in which she stated that MILO FRANCO, SR, was wearing a black shirt, blue jean pants, and some type of tennis shoes when he shot H.L. In addition, SA Jones was informed that during an interview with John Doe #1, John Doe #1 stated that FRANCO was wearing a black shirt, blue jean pants, and tennis shoes when he shot H.L.

26. While there are different accounts as to what he was wearing at the time of the shooting in comparison to what he was wearing when he turned himself in, there is probable cause that he may have changed his clothing at the TARGET RESIDENCE before turning himself in. Further, given his proximity to H.L. during the shooting, there is probable cause that there would be H.L.'s blood on MILO FRANCO, SR's clothing. As such, there is probable cause to search the TARGET RESIDENCE for clothing that may contain H.L.'s blood.

27. Based on my experience working violent crime investigations on the GRIC, I know that criminals engaged in shooting other individuals are known to store their weapons in their own residences. Given that no firearm has been recovered at this time, and FRANCO was witnessed to have been at the TARGET RESIDENCE after the shooting, there is probable cause that the firearm used to shoot H.L. may have been stored at the TARGET RESIDENCE while MILO FRANCO, SR, was there. It is my experience that firearms have been hidden in multiple locations that are on the property but not necessarily within the residence. I have conducted multiple investigations in which firearms have been concealed in vehicles and outlying structures

on the same property as the residence. As such, I feel there is probable cause that the firearm used in the shooting could be hidden outside of the residence as well, in a vehicle or outlying structure.

28. Further, based on my experience working violent crime investigations on the GRIC, I know that criminals engaged in violent encounters, discuss their actions by utilizing electronic devices. Those same individuals will typically store those devices in their homes of record. It was reported that MILO FRANCO, SR, did not have an electronic device on him when he was taken into custody. Though it was reported by witnesses that FRANCO is not known to have a device, it is my experience that individuals that are involved in criminal activity may maintain devices that others may not know about. Furthermore, others may try to conceal their methods of communication. As such, there is probable cause that an electronic device that contains evidence of the events leading up to and in the aftermath of the shooting may be contained in the TARGET RESIDENCE.

29. Based on the previous witness statements, it is known by others that the TARGET RESIDENCE is the known residence for MILO FRANCO, SR. Furthermore, MILO FRANCO, SR, admitted that the TARGET RESIDENCE is his current residence.

30. SA Herndon confirmed the location of the residence by providing your Affiant with photographs of the TARGET RESIDENCE, as shown in Attachment A. As seen in the photographs, the residence contains a "1545" affixed to the west facing front of the residence.

31. At the time of this writing, MILO FRANCO, SR, is in custody of the GRPD, and the residence is being surveilled by members of the FBI Phoenix Central Arizona Safe Trails Task Force and the GRPD.

## CONCLUSION

32. Based on the foregoing, I believe that there is probable cause that MILO FRANCO, SR, has engaged in Assault with a Dangerous Weapon, in violation of Title 18 U.S.C. §§ 1153 and 113 (a)(3) and that the property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B of this Affidavit, are located on the property of the TARGET RESIDENCE as more fully described in Attachment A.

Respectfully submitted,

DANIEL BAKER
Digitally signed by DANIEL BAKER
Date: 2022.06.10 19:24:22 -07'00'

Daniel F. Baker
Special Agent
Federal Bureau of Investigation

Telephonically subscribed and sworn before me this __10__ of June, 2022.

Hon. Michelle H. Burns
United States Magistrate Judge